AARON M. CLEFTON, Esq. (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C
#336
Alameda, CA 94501
Telephone: 510/832-500
aaron@cleftonlaw.com

Attorneys for Plaintiff
DARLENE TARDIFF

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DARLENE TARDIFF

Plaintiff,

v.

KEYSTONE RESTAURANT COMPANY LLC (CA) dba LIBERTY SPORTS BAR & GRILL

Defendant.

CASE NO.
Civil Rights

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES REGARDING DENIAL OF SERVICE DOG AND HANDLER TO EQUALLY USE AND ENJOY PUBLIC ACCOMMODATION:**

1. **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**
2. **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**
3. **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**

DEMAND FOR JURY TRIAL

Plaintiff DARLENE TARDIFF complains of Defendant KEYSTONE RESTAURANT COMPANY LLC (CA) dba LIBERTY SPORTS BAR & GRILL, and alleges as follows:

1. **INTRODUCTION:** Plaintiff Darlene Tardiff is a disabled individual who uses the assistance of a service dog to ameliorate her disability. On June 22, 2025, Plaintiff went to Liberty Sports Bar & Grill ("Liberty Bar") located at 3399 Main Street, Mammoth Lakes, California 90024 to have a drink with some friends visiting from out of town. As is her usual practice, Plaintiff was accompanied by her service dog Roadie. Plaintiff and her friends entered

Liberty Bar around 3 pm, and Defendant's employee who was working behind the bar immediately yelled "all dogs must be outside." Plaintiff informed Defendant's employee that her dog is a service dog and therefore allowed to accompany her wherever the general public is allowed. Defendant's employee rolled his eyes and then shook his head as if he did not believe Plaintiff. He turned around without saying anything further. Plaintiff and her friends found a table and sat down. Plaintiff's service dog, Roadie, immediately settled himself under the table and went to sleep.

2. One of Plaintiff's friends approached the bar to order drinks for the group. However, Defendant's employee ignored him and refused to serve him for at least 10 minutes. Plaintiff's friend finally got three drinks and brought them back to the table for the group. Plaintiff's group was chatting about the actions of Defendant's bartender with a table nearby. Plaintiff started exhibiting signs of anxiety, and Roadie woke up and alerted her so that she could calm herself down. Plaintiff reached down to pick up Roadie as that is a way she calms herself when she experiences anxiety.

3. As soon as she picked up Roadie, Defendant's bartender yelled at Plaintiff from across the bar to "put that dog on the ground!" Then he yelled at Plaintiff that "service dogs should not act like that!" Plaintiff immediately placed Roadie back on the ground and attempted to explain that her service dog was performing a task to ameliorate her disability, but Defendant's bartender refused to listen. At this point other bar patrons became involved. One patron got up and said he was leaving due to Defendant's poor treatment of Plaintiff and her service dog. Another patron told Plaintiff and Defendant's employee that if Plaintiff's dog is a service dog she should have paperwork proving it. Plaintiff told Defendant's bartender and the other bar patron that the law does not require her to have any paperwork proving that her dog is a service dog. Defendant's employee yelled at Plaintiff "yes you do!" Then, he questioned whether Plaintiff was disabled at all and told her to "prove" her disability.

4. Plaintiff became upset, and she was unsure what to do. While she was trying to figure out what to do, another bar patron called the police. When the police came, they asked Plaintiff to come outside. They questioned her while numerous bar patrons and other people

watched who walked by them. Plaintiff explained the situation to the police. She asked the police if she could go back inside to finish her beverage and enjoy the rest of her afternoon. The police went inside Liberty Bar to speak with the bartender, but when the police came back out, they told Plaintiff that Defendant's bartender had said that she was not allowed to go back inside and that her dog is not allowed inside Liberty Bar. At this point, it was clear to Plaintiff that she would not be allowed back into the bar with her service dog, so her friend drove her home. Plaintiff was extremely humiliated and upset by what happened at Liberty Bar.

5. Defendant denied disabled Plaintiff Darlene Tardiff equal access to Liberty Sports Bar & Grill because she is a disabled individual who uses a service dog to assist her with tasks related to her disability. Further, Defendant's employee treated Plaintiff with complete disrespect due to the presence of her service dog, offering qualitatively different services to her than they give to other non-disabled patrons, including asking Plaintiff extremely personal questions about her disability and publicly ejecting her from Liberty Bar.

6. The Defendant's decisions to only allow service dogs to sit outside at its bar and to require proof of disability or service dog status are patently discriminatory and did not afford equal access and enjoyment of its services. It also contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals." In relevant part, the guidance states:

> When it is not obvious what service an animal provides, only limited inquiries are allowed. Staff may ask two questions: (1) is the dog a service animal required because of a disability, and (2) what work or task has the dog been trained to perform. Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task.
>
> …
>
> - A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a

legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

- Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.
- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/. Similarly, the DOJ's FAQs regarding Services Animals mirror these requirements:

> **Q17. Does the ADA require that service animals be certified as service animals**?
>
> A. No. Covered entities may not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal, as a condition for entry.
>
> **There are individuals and organizations that sell service animal certification or registration documents online. These documents do not convey any rights under the ADA and the Department of Justice does not recognize them as proof that the dog is a service animal.**

https://www.ada.gov/resources/service-animals-faqs/

7. Plaintiff has been Liberty Bar several times before this incident before they changed their policy to disallowing service dogs inside the bar. She enjoys the food, drinks and entertainment provided at Liberty Bar, and it is at a convenient location for Plaintiff to enjoy when she is on vacation in Mammoth Lakes. There are also relatively few options for eating and drinking in Mammoth Lakes, a city with a population of just over 7,000 people. Plaintiff intends to return to Liberty Bar in the future but cannot do so until the policies of the bar are made accessible to disabled individuals who use service dogs, including revision of its service dog

policies and necessary employee training and/or re-training. She has brought this lawsuit to force Defendant to change its discriminatory and illegal policies and compensate her for refusing her equal access to service at Liberty Bar because she is a disabled person who needs the assistance of her qualified service dog. Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at Liberty Bar.

8. **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1343. This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

9. **VENUE:** Venue is proper in this court pursuant to 28 U.S.C. section 1391(b) and is proper because the real property which is the subject of this action is in this district and that Plaintiff's causes of action arose in this district.

10. **PARTIES:** Plaintiff Darlene Tardiff is a "qualified" disabled person who uses the assistance of a service dog to ameliorate her disability. Plaintiff suffers from post-traumatic stress disorder (PTSD) and anxiety stemming from a horrific motorcycle accident she was involved in and the subsequent unlawfully performed medical care she received as a result. Plaintiff experiences nightmares, renumerating thoughts, and hypervigilance which can manifest as constant worrying, repetitive behaviors such leg shaking, pacing and scratching herself. Plaintiff's disability significantly impacts her ability to concentrate, work, and sleep.

11. Plaintiff relies upon her service dog, a poodle/Australian shepherd mix named "Roadie," to assist her with certain tasks to ameliorate her disability. These include waking her from nightmares, interrupting repetitive and potentially destructive behaviors such as leg shaking and scratching, and alerting her to PTSD and anxiety symptoms so that she can focus on calming and redirecting herself. Roadie is trained to paw Plaintiff's leg until she ceases repetitive or ruminating behavior and focuses her attention on Roadie. This brings Plaintiff's attention to the present and allows her to focus on what is happening in the moment rather than ruminating on past events. Additionally, Roadie is trained to jump on Plaintiff's chest when she is experiencing a nightmare. All of these tasks Plaintiff has trained Roadie to do. They are not behaviors that Roadie has engaged in naturally or without training. Roadie was individually trained to be a

service dog by Plaintiff, and they have been working together for approximately one year. Additionally, Plaintiff continues to reinforce the training with Roadie daily. Plaintiff is a qualified person with a disability as defined under federal and state law who is substantially limited in the major life activities of interacting with other people, concentrating and working. 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

12. Defendant KEYSTONE RESTAURANT COMPANY LLC (CA) dba LIBERTY SPORTS BAR & GRILL is and was at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business located at 3399 Main Street, Mammoth Lakes, California, known as the Liberty Sports Bar & Grill.

13. Liberty Sports Bar & Grill is a place of "public accommodation" and a "business establishment" subject to the requirements *among other things* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq*.

14. **FACTUAL STATEMENT:** Plaintiff Darlene Tardiff has been working with her service dog Roadie for approximately one year. Roadie is a poodle/Australian shepherd mix who was trained to be a service dog. Plaintiff has trained and continues to train Roadie to serve her specific needs throughout their relationship. Roadie is specifically trained to assist Plaintiff by interrupting destructive behaviors, alerting her to anxiety and PTSD symptoms, and waking her from nightmares.

15. Plaintiff used online resources including many You-Tube videos such as those produced by Youtube channel DoggyU regarding training of psychiatric service dogs in order to assist her in training Roadie to perform his tasks. Plaintiff used praise and voice and treat reward training techniques to train Roadie. For example, Plaintiff trained him to interrupt destructive behaviors such as repetitive scratching by pretending to perform repetitive movements and luring Roadie to her with special treats when she was pretending to experience these symptoms. When Roadies pawed her leg to interrupt her, Plaintiff would give Roadie the reward treat and praise him. Now Roadie performs the task when Plaintiff is experiencing the symptoms without the need for the special treat.

16. Roadie is a working service dog; he is not a pet. Plaintiff and Roadie have trained extensively together, and they supplement that training daily. Plaintiff takes Roadie everywhere with her in public. It is important they stay together as much as possible because (a) Roadie provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond. With few exceptions, where Plaintiff goes, Roadie goes. Below is a photo of Roadie similar to what he looked like on the day of the incident:



17. On June 22, 2026, at approximately 3:00 p.m., Plaintiff went to Liberty Bar with her friends, who were visiting the area at the time. Plaintiff was accompanied by her trained psychiatric service dog, Roadie. Plaintiff had patronized Liberty Bar with Roadie on numerous occasions over the preceding six to seven months without any prior incident.

18. Upon entering Liberty Bar, and within a few steps of the entrance, Defendant's bartender ("Bartender"), loudly announced, that all dogs were required to remain outside. Plaintiff responded that Roadie was her service dog. The Bartender responded by rolling his eyes and shaking his head in apparent disbelief or refusal, and then he turned away without further comment or inquiry.

19. Plaintiff and her friends proceeded to a high-top table near the front window, in close proximity to the bar. When they arrived at the table, Roadie immediately lay down underneath it and went to sleep. After waiting approximately five to ten minutes without being approached by any server, Plaintiff’s friend went to the bar to order drinks for the group. The Bartender made him wait approximately ten minutes and was rude to him throughout the interaction before finally providing him with the requested drinks.

20. While they were at their table, Plaintiff and her friends began speaking with other patrons at a neighboring table, including a discussion of the Bartender's earlier conduct toward Plaintiff’s group. During this time, Plaintiff's leg began to shake — a repetitive movement associated with her PTSD and anxiety. Roadie, who had been asleep, woke and performed his trained psychiatric service task of alerting to and interrupting this behavior. Plaintiff picked Roadie up so that he could continue performing his calming task and help de-escalate her rising anxiety.

21. Immediately upon Plaintiff picking Roadie up, the Bartender yelled loudly across the bar — audible to the rest of the patrons — ordering Plaintiff to put the dog on the ground, stating that dogs belong on the floor and that "this is not how a service dog acts." Plaintiff told him Roadie was performing his task as a service dog, put him down, and Roadie returned to his position underneath the table.

22. A patron seated nearby intervened on Plaintiff's behalf, telling the Bartender to leave Plaintiff and her dog alone, as they were not bothering anyone. An argument broke out between that patron and the Bartender, during which the Bartender made an obscene gesture toward the patron and the patron reciprocated. The patron then asked for his bill so that he could leave; the Bartender threw the patron's credit card at him. Plaintiff approached the bar and apologized to the patron, asking him not to leave on her account.

23. A second patron seated at the bar produced a service-dog identification card from his wallet and told Plaintiff that she should have similar documentation for Roadie, if he is a service dog. That patron did not have his alleged service dog with him. The Bartender agreed with this patron.

24. Plaintiff stated that she did not need such documentation for her service dog. The Bartender and the second patron then said that Roadie was probably not a real service dog and that Plaintiff was probably not actually disabled. The Bartender demanded that she "prove" her disability. Plaintiff began to search through her phone, initially intending to show documentation of her disability, but stopped and decided not to, telling them she was not obligated to disclose private information to prove her disability to them, and sat back down.

25. A third patron in the bar then called the police, falsely reporting that Plaintiff and another customer were fighting with staff and that Roadie was behaving aggressively. In fact, Roadie remained asleep underneath the table throughout the incident and no physical altercation occurred at all.

26. Two police cars and four armed officers responded to the scene. One officer asked Plaintiff to step outside to speak with him. Roadie, who had been asleep under the table until this point, woke and accompanied her. The officer asked Plaintiff whether she had touched any employees and whether any employee had touched her. Plaintiff answered no to both inquiries. The officer told Plaintiff that this was a civil matter, and that she should pursue it civilly.

27. Plaintiff asked the police officer whether she could go back inside to finish her drink, explaining she had done nothing wrong. The officer went inside to ask the Bartender. The Bartender told the officer that Plaintiff could not return and specifically stated that her dog was not allowed back inside. The officer relayed to Plaintiff that the establishment had the right to refuse service and that this remained a civil matter.

28. As a result of the incident, Plaintiff was humiliated in front of numerous patrons and staff who witnessed the confrontation, including individuals who recognized her from the community. Plaintiff left Liberty Bar and returned home, where she cried for an extended time due to the incident. Although she had planned to remain in Mammoth Lakes for several additional days, she packed her belongings that night and departed the following morning. Since the incident, Plaintiff has experienced increased PTSD symptoms, including nightmares, and has avoided going out in public in Mammoth Lakes out of fear of encountering the Bartender or other individuals present during the incident.

29. Plaintiff often vacations in Mammoth Lakes, and her boyfriend owns a vacation condominium in the area. She has a desire to return to Liberty Bar to enjoy the food, drinks and entertainment they offer. However, Plaintiff does not want to go back to Liberty Bar because her previous experiences have made it clear that Defendant does not maintain a service animal policy that complies with state and federal access laws. It is also clear that Defendant's employees have not received training about how to interact with disabled patrons who rely on service dogs for assistance.

30. Plaintiff wishes to return to Liberty Bar, but only *after* Defendant has implemented proper service animal policies and training of its staff. Plaintiff is deterred from returning to Liberty Bar until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 U.S.C. §§ 12101 *et seq*.)**

31. Plaintiff repleads and incorporates by reference, as if fully set forth again here, the factual allegations contained in Paragraphs 1 through 30, above, and incorporates them here by reference as if separately repled hereafter.

32. In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101(a).

33. The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or

leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.

34. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

35. Liberty Bar is a public accommodation under Title III of the ADA. 42 U.S.C. § 12181(7)(B).

36. The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

37. Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

38. Defendant has a policy and practice of denying access to patrons of Liberty Bar with service animals. The Defendant's decisions to only allow service dogs to sit outside at its bar and to require proof of disability or service dog status are patently discriminatory and did not afford equal access and enjoyment of its services. It also contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals." In relevant part, the guidance states:

> When it is not obvious what service an animal provides, only limited inquiries are allowed. Staff may ask two questions: (1) is the dog a service animal required because of a disability, and (2) what work or task has the dog been trained to perform. Staff cannot ask about the person's disability, require medical documentation, require a special

identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task.

…

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**
- Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.
- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/. Similarly, the DOJ's FAQs regarding Services Animals mirror these requirements:

> **Q17. Does the ADA require that service animals be certified as service animals**?
>
> A. No. Covered entities may not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal, as a condition for entry.
>
> **There are individuals and organizations that sell service animal certification or registration documents online. These documents do not convey any rights under the ADA and the Department of Justice does not recognize them as proof that the dog is a service animal.**

https://www.ada.gov/resources/service-animals-faqs/.

39. On information and belief, as of the date of Plaintiff's most recent visit to Liberty

Bar on or about June 22, 2026, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

40. In passing the Americans with Disabilities Act of 1990 ("ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b).

41. As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 U.S.C. § 12181 *et seq.*). The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "restaurant, bar, or other establishment serving food or drink." 42 U.S.C. § 12181(7)(B).

42. The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182. The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to

participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

The acts and omissions of Defendant set forth here were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

43. On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

44. Defendant's actions continue to deny Plaintiff's right to full and equal access by deterring Plaintiff from patronizing Liberty Bar and discriminated and continue to discriminate against her on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA. 42 U.S.C. § 12182.

45. Under the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of her disabilities in violation of sections 12182 and 12183 of this title. On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before

Plaintiff's encounters. Under section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

46. Plaintiff seeks relief under remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing she will be subjected to such discrimination each time that she may use the property and premises, or attempt to frequent Liberty Bar, in light of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as stated below.

**SECOND CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

47. Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 46 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

48. Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places." Civil Code § 54(a).

49. Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited." Civil Code § 54.1(c) also specifies that "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of

training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

50. Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

51. Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

52. Liberty Bar is a public accommodation within the meaning of the CDPA. On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

53. Defendant made the decision to knowingly and willfully exclude Plaintiff and her service dog from its public accommodation and thereby deny Plaintiff her right of entrance into its place of business with her service dog. As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this public accommodation and place of business based on Defendant's illegal prohibition of her legally protected use of her service dog. Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should she seek to return to these facilities. Plaintiff cannot return to Liberty Bar until she receives the protection of this Court's injunctive relief, and she has continued to suffer discrimination daily since June 22, 2026, all to her statutory damages under California Civil Code §§ 54.1, 54.2, and 54.3.

54. **INJUNCTIVE RELIEF:** Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of here which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are

disabled, who require the assistance of service animals, from full and equal access to these public facilities. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against her on the sole basis that she is a person with disabilities who requires the assistance of a service animal.

55. Plaintiff wishes to return to patronize Liberty Bar but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause her further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to patronize Liberty Bar and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

56. The acts of Defendant have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court. Plaintiff seeks injunctive relief as to Defendant's inaccessible policies. As to Defendant that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

57. Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply immediately with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws. Plaintiff further requests that the Court award damages under Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs under Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as prayed below for.

58. **DAMAGES:** Because of the denial of full and equal access to the described

facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of her civil rights, including, but not limited to, rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to her damages per Civil Code section 54.3, including general and statutory damages, as stated below. Defendant's actions and omissions to act constitute discrimination against Plaintiff because she was and is disabled and unable, because of the policy barriers created and/or maintained by Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons. The violations have deterred Plaintiff from returning to attempt to patronize Liberty Bar and will continue to cause her damages each day these barriers to access and policy barriers are still present.

59. Although Plaintiff need not prove wrongful intent to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or was made aware of its duties to refrain from establishing discriminatory policies against disabled persons, before this complaint was filed. Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

60. **FEES AND COSTS:** As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, under Civil Code sections 54.3 and 55. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure section 1021.5 and other applicable law.

61. Plaintiff suffered damages as above described as a result of Defendant's violations. Damages are ongoing based on her deterrence from returning to Liberty Bar.

WHEREFORE, Plaintiff prays for relief as stated below.

**THIRD CAUSE OF ACTION:
VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED
BY CIVIL CODE SECTION 51(f)**

62. Plaintiff re-pleads and incorporates by reference, as if fully set forth again here, the allegations contained in Paragraphs 1 through 61 of this Complaint and incorporates them herein as if separately re-pleaded.

63. At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

64. California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of her disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

65. Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

66. Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief under California law, including Civil Code section 52. Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

67. The actions and omissions of Defendant as alleged here constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs under California Civil Code sections 51 and 52. As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and is responsible for statutory and compensatory damages to Plaintiff, according to proof.

68. **FEES AND COSTS:** As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs under California Civil Code sections 51 and 52. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure section 1021.5 and other applicable law.

69. Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as stated below.

## PRAYER

Plaintiff has no adequate remedy at law to redress the wrongs suffered as stated in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury because of the unlawful acts, omissions, policies, and practices of Defendant as alleged herein, unless Plaintiff is granted the relief she requests. Plaintiff and Defendant have an actual controversy and opposing legal positions on Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Darlene Tardiff prays for judgment and the following specific relief against Defendant:

1. An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

   a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

   b. To modify its policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that her service dog will not be excluded should she desire to enter and use the services of Liberty Sports Bar & Grill;

   c. That the Court issue preliminary and permanent injunction directing Defendant as current owner, operator, lessor, and/or lessee and/or its agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction under ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

   d. An order retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of statutory, actual, general, treble, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

4. An award of prejudgment interest under Civil Code § 3291;

5. Interest on monetary awards as permitted by law; and

6. Grant any other relief that this Court may deem just and proper.

Date: September 9, 2026

CLEFTON DISABILITY LAW

*/s/ Aaron M. Clefton*
By AARON M. CLEFTON, Esq.
Attorneys for Plaintiff
DARLENE TARDIFF

**JURY DEMAND**

Plaintiff demands a trial by jury for all claims for which a jury is permitted.

Date: September 9, 2026

CLEFTON DISABILITY LAW

*/s/ Aaron M. Clefton*
By AARON M. CLEFTON, Esq.
Attorneys for Plaintiff
DARLENE TARDIFF